NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 13, 2010
Decided July 6, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-2509

ROBERT WAGNER,
        *Plaintiff-Appellant*,

    *v.*

ALLIED PILOTS ASSOCIATION
DISABILITY INCOME PLAN,
        *Defendant-Appellee*.

Appeal from the United States District
Court for the Northern District of
Illinois, Eastern Division.

No. 08 C 2750

Suzanne B. Conlon, *Judge*.

### O R D E R

Robert Wagner was a pilot for American Airlines. For almost ten years he was covered by a long-term disability plan offered by the Allied Pilots Association; unfortunately, in 2004 he terminated his policy and in 2005 re-enrolled. This meant that he was now subject to all of the plan's limitations and exclusions. Three months after re-enrolling Wagner ceased flying; almost a year later he applied for benefits, claiming he had a rare inner-ear disorder that caused him to experience dizziness and migraines. The plan administrator rejected his claim on

several bases, including, and pertinent here, that he was disabled within six months of the policy's effective date and the disability was not due to an injury after that date. Wagner then filed suit against the Disability Plan ("Plan") and the district court granted summary judgment in its favor. It found that the plan administrator did not abuse its discretion when it refused to re-open Wagner's claim and that it did not abuse its discretion when it denied him coverage under the plan. He now appeals. Because the plan administrator offered a reasoned basis, supported by the record, for denying Wagner's claim, we affirm.

I.

Robert Wagner was a commercial airline pilot for American Airlines, and beginning in 1996 he was enrolled in the Allied Pilots Association's disability income plan. For a reason not reflected in the record he terminated his policy in 2004; the following year he re-enrolled with an effective date of April 1, 2005. By re-enrolling, Wagner's participation in the plan was subject to all the exclusions applicable to new enrollees. The disability plan excluded coverage for disabilities that occurred within six months of the enrollment date, unless the disability arose from an injury occurring after the effective date of coverage.[1]

For many years, Wagner experienced problems related to his sinuses and ears. And in 1996, he began seeing Dr. Stephen Yeh, an otolaryngologist—better known as an ear, nose, and throat doctor. At times the problems were severe, causing Wagner to suffer migraine headaches, dizziness, and sinusitis. Over the years, Dr. Yeh prescribed many different methods of treatment, including surgery in 1999.

On July 20, 2005, at Wagner's appointment with Dr. Yeh, they discussed the possibility of revision surgery to address his persistent problems. Yeh's notes also reflect that Wagner complained of "headaches and the effect of flying on his headache and feeling of disequilibrium with headaches." The doctor's notes mention that these may have been migraines, but he did not diagnose them as such.

The next day, on July 21, Wagner was landing a plane and noticed a problem that he later described as incapacitating disequilibrium. He assumed it would go away on its own, but

---

[1] The pertinent language reads as follows:
(F) Any disability for which the date of Onset of Disability is within six months following the Effective Date of coverage unless the Disability is due to an injury that occurs after the Effective Date of coverage.

it didn't.  Since that day Wagner has not flown a commercial airplane. In August he again saw Dr. Yeh and again complained of disequilibrium and fullness in his ears. At this time, Wagner opted for further surgery to address these problems.

Several months after the surgery Wagner consulted another specialist, Dr. Timothy Hain, who diagnosed him with perilymph fistula, bilateral hydrops, and sinus headaches. The diagnosis of a perilymph fistula is at the center of this case.  A perilymph fistula is a small abnormal opening between the air-filled middle ear and fluid-filled inner ear. These openings or tears  are most commonly caused by barotrauma—pressure injuries, which often occur during scuba diving or following an airplane's descent during landing.  These tears cause dizziness, unsteadiness, and a rush of symptoms when there is a pressure change, which can be as simple as a person blowing his nose.  In other words, a perilymph fistula is debilitating for any person but especially a pilot.

After seeing Dr. Hain in December 2005, Wagner again saw Dr. Yeh, still complaining of dizziness.  The notes from that visit indicate that the surgery went well, and Dr. Yeh regarded Dr. Hain's diagnosis of perilymph fistula as "unusual." During a follow-up visit the next month, Dr. Yeh noted that Wagner's sinusitis had improved and that it "was unclear whether his dizziness is a primary condition or related to his sinusitis or migraines." He also noted that "[i]n any case his sinusitis and headache and disequilibrium issues appear to be environmentally related. [Wagner] connects these symptoms with long airplane flights and nasal dryness."

On May 10, 2006, Wagner filed a claim for benefits under the long term disability plan. He claimed that he was disabled due to "chronic sinusitis, migraines and dizziness." His claim was denied.  He then appealed, and in support submitted a letter from Dr. Hain that stated Wagner's disability was a perilymph fistula. Because Wagner submitted information on his appeal suggesting a different disabling condition, the plan administrator treated the perilymph fistula diagnosis as a second claim, rather than an appeal.  After gathering information from Wagner and his doctors about the perilymph fistula, the plan administrator denied the second claim because the disability occurred within six months of the plan's effective date of coverage (April 1, 2005) and was not the result of an injury occurring after that date.

Wagner appealed both decisions to the Plan's Benefits Review and Appeals Board ("Board"). In support of his appeal, he submitted two letters from Dr. Hain concerning his perilymph fistula.  Wagner also produced a letter from MetLife rejecting his claim for benefits under a different disability plan because his injury was work related. After reviewing this information, the Plan requested medical records from Wagner concerning the date of his injury

and a list of all the doctors who had treated him for the condition. Wagner stated that he first noticed the problem on July 21, 2005. The plan administrator also asked Dr. Hain for clarification of when the perilymph fistula occurred. Dr. Hain responded with Wagner's records but nothing that stated or suggested a date of injury. In his notes, Dr. Hain merely noted that Wagner has "had ample exposure to pressure changes in the course of [his] career." Dr. Yeh also submitted a letter stating that his first notation about perilymph fistula was on December 13, 2005. Nothing was provided concerning the specific date of Wagner's injury. For the perilymph fistula to be covered, it has to have occurred after the effective date of coverage—April 1, 2005.

The Plan then submitted Wagner's appeal and records for review to an independent medical doctor, Dr. Antonelli. In her report, Dr. Antonelli noted that the documentation provided did not indicate that a specific traumatic event had occurred. She also discussed what a difficult diagnosis perilymph fistula is to make and that the records do not show how long Wagner has had it. That evaluation was forwarded with the rest of Wagner's information to the Board, which denied his appeal.

In the statement of reasons for denying the appeal, the Board stated that "[n]o medical evidence was presented that conclusively showed the perilymph fistula occurred on July 21, 2005. In fact, medical records show that you had symptoms consistent with perilymph fistula prior to July 2005." Therefore, it found that his claim fell under the exclusion for disabilities that occurred in the first six months of the policy and was not due to an injury after the effective date. It was on that basis that they denied his claim.

Almost a year later, Wagner hired an attorney and sought to re-open the claim in order to provide a response to Dr. Antonelli's report. Attached to the request was a letter from Dr. Owen Black rebutting much of what Dr. Antonelli's report contained and another letter from Dr. Hain stating: "[m]y opinion is that it is more likely than not that Captain Wagner's fistula occurred, in July 2005, rather than in 2001."

The plan provides a 180-day window for appeals of a claim's denial and only materials received during that time will be considered. The plan also states that "[t]here will be no exception to this rule." Citing that language, the plan administrator rejected Wagner's request to re-open his claim. He then sued the Plan under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, ("ERISA") 29 U.S.C. § 1132(a)(1)(B).

The district court considered cross-motions for summary judgment on whether the plan administrator abused its discretion by failing to re-open the claim and granted summary

judgment for the Plan, finding that it was not arbitrary and capricious for the plan administrator to follow the deadlines set forth in the plan's language. The Plan filed a second motion for summary judgment on whether the plan administrator's denial of Wagner's claim was arbitrary and capricious. After considering the motions, the district court granted summary judgment for the Plan, finding that the record supported the denial of Wagner's claim for disabilities because his disability occurred within six months of the policy's effective date and was not due to injury during that time.[2]

II.

We review the district court's grant of summary judgment de novo, meaning we review the the "plan administrator's determination directly." *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860 (7th Cir. 2009). Summary judgment is appropriate when "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as here, the plan gives the administrator "discretion to determine who is eligible for benefits, we review its decision under the arbitrary and capricious standard." *Jenkins*, 564 F.3d at 860-61. Under that standard, we look to ensure that the administrator's decision "has rational support in the record." *Id.* at 861 (quotation omitted). In other words, we will uphold the decision as long as the administrator offers "a reasoned explanation, based on the evidence, plan documents, and relevant factors that encompass the important aspects of the problem." *Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 376 (7th Cir. 2009). And when, as here, we review cross-motions for summary judgment, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted).

III.

A.

On appeal, Wagner first argues that the plan administrator should have re-opened his claim and reconsidered its decision in light of new evidence. Eleven months after the plan

---

[2] The plan administrator also denied Wagner's claim because he suffered from a pre-existing condition. Wagner also appeals that decision. Because we find that the plan administrator's decision to reject his claim for a non-injury disability was not arbitrary and capricious, we do not need to reach whether the plan administrator abused its discretion in making its pre-existing condition determination.

administrator denied the appeal Wagner sought to re-open the claim and submit additional material on his disability.   It denied the request, citing the plan's plain language that participants must provide any documents, records, or materials to support his claim within "180 days after the Plan Participant receives notice of the adverse benefit determination.  Any request for review received by the [Plan]  after this 180-day period will be null and void." This language is echoed elsewhere in the plan, where it states that "only Appeal Materials received by the [Plan] prior to the end of 180-day period will be considered.  There will be no exception to this rule."

We have previously held that in most cases "unambiguous terms of a pension plan leave no room for the exercise of interpretive discretion by the plan's administrator." *Call v. Ameritech Mgmt Pension Plan*, 475 F.3d 816, 822-23 (7th Cir. 2007).   The administrator must implement and follow the plain language of the plan, in so much as they are consistent with the statute. 29 U.S.C. § 1104(a)(1)(D).   This includes a deadline that is consistent with the regulations governing ERISA claims. 29 C.F.R. § 2560.503-1(h)(3)(i)(benefit plan must "[p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination").   And by imposing this deadline on Wagner's appeal, the plan administrator did not act arbitrarily.  *Speciale*, 538 F.3d at 623; *Tegtmeier v. Midwest Operating Engineers Pen. Trust Fund*, 390 F.3d 1040, 1047 (7th Cir 2004) (applying deadlines is proper given the plan's need "for finality of decisions").   Thus, the plan administrator did not act arbitrarily and capriciously in enforcing the plan's clearly established deadlines and denying Wagner's request to re-open the claim.[3]

B.

Wagner also appeals the plan administrator's decision to deny him benefits.  Again, our review of the plan administrator's decision is extremely deferential: all we require is "a reasoned explanation, based on the evidence, plan documents, and relevant factors that encompass the important aspects of the problem."  *Fischer*, 576 F.3d at 376. The issue of whether we would have "reached the same conclusion is irrelevant; we will overturn the fiduciary's

---

[3] Upholding the Plan's decision to not re-open the claim has significant consequences for Wagner's  appeal: the strongest evidence concerning his disability was submitted after the claim was closed.  He submitted a letter from Dr. F. Owen Black that called into question many of the conclusions Dr. Antonelli made in her report. But we may consider only the "evidence that was before the administrator in deciding whether her decision passes muster." *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 619 (7th Cir. 2008).

denial of benefits only if it is completely unreasonable." *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 659 (7th Cir. 2005) (citation and internal quotations omitted). Wagner argues that the plan administrator wrongfully denied him benefits because his perilymph fistula was caused by an injury on July 21, 2005. Under the policy a disability that arises within six months of the policy's effective date is excluded from coverage, unless it is from an injury that also occurred after the policy's effective date.

Wagner likely has a perilymph fistula and is disabled, even Dr. Antonelli stated as much. The problem is that it's unclear when the perilymph fistula occurred and whether it was an injury after the effective date of the policy. The Board's decision was based on a lack of evidence submitted by Wagner. To its credit, the plan administrator repeatedly tried to determine the precise date of Wagner's injury and specifically requested medical records from Wagner and his doctors that supplied some evidence of the date of the injury. But nothing was produced. Dr. Hain merely stated that Wagner had "ample exposure to pressure changes in the course of his career." And even after the plan administrator specifically requested a date of injury from Dr. Hain, he did not provide one. Dr. Yeh's records also don't provide any evidence of an injury. He was, in fact, indecisive about whether a perilymph fistula was the precise problem.

The only evidence of an injury occurring is in the brief statements that Wagner submitted. In them he states that he felt different during that last flight on July 21, 2005, and "didn't know what happened." In the second statement, Wagner vaguely stated

> the first time I noticed this problem was the day I last flew an airplane for American Airlines (July 21, 2005). At that time, I had absolutely no idea what had happened to me to cause this, nor what the exact problem was. I thought that perhaps it would go away on its own. However, this problem never went away. It was not until I consulted Dr. Hain that I was told what the cause of my dizziness was.

Wagner previously described "the problem" as incapacitating disequilibrium.

From the little we can glean from the medical records and reports of perilymph fistula in the record, it is a severe condition. It is difficult to diagnose, but its symptoms are dizziness and headaches. The symptoms that Wagner said he experienced on that last plane flight are nondescript: it is also not clear how this disequilibrium was different from the disequilibrium he experienced and reported to Dr. Yeh the day before his last flight. There is also nothing in Dr. Yeh's notes during the next appointment, three weeks after that flight, that mentions this

constant, debilitating equilibrium.  And nothing in the records suggests that the headache or dizziness that he experienced on that last flight were the product of a perilymph fistula injury during that descent or from a descent months earlier or that the perilymph fistula occurred in a different manner at some other time before the plan's effective date.  In short, there is nothing in the record to support the conclusion that Wagner had an injury during the first six months of the policy's effective date.

It is clear that Wagner had a disability onset during the first six months of the policy's effective date.  But the only thing in the record that suggests that Wagner also suffered an injury during that time is his vague statement about "something different" during the descent on July 21, 2005. And that statement does not carry sufficient weight to make the plan administrator's decision arbitrary and capricious. *Davis*, 444 F.3d at 576-77 ("The judicial task here is not to determine if the administrator's decision is correct, but only if it is reasonable.").

IV.

We find that the Plan did not act arbitrarily and capriciously by denying Wagner's request to re-open his claim after the deadline had passed.  Similarly, given the deferential standard of review that we apply to these cases and the fact that the plan administrator considered all of the evidence and arrived at a reasonable conclusion, we find that the plan administrator did not act arbitrarily and capriciously when it rejected Wagner's disability claim.  Accordingly, the judgment of the district court is AFFIRMED.