In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-2326

AUGUSTA EDWARDS,

*Plaintiff-Appellant*,

*v.*

BRIGGS & STRATTON RETIREMENT PLAN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-0496-AEG—**Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED JANUARY 18, 2011—DECIDED APRIL 29, 2011

Before TINDER and HAMILTON, *Circuit Judges* and
MURPHY, *District Judge.*

MURPHY, *District Judge.*[*]

[*] The Honorable G. Patrick Murphy of the Southern District
of Illinois, sitting by designation.

## I. Introduction

The issue presented by this appeal, which arises out of a suit brought by Plaintiff-Appellant Augusta Edwards against Defendant-Appellee Briggs & Stratton Retirement Plan ("the Plan") for benefits due under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is straightforward: whether the Plan should have excused the fact that Edwards's administrative appeal from a denial of her claim for disability benefits by the Plan was approximately eleven days late. The issue concerns, of course, whether Edwards exhausted her administrative remedies as a predicate to filing suit under ERISA in federal court. Finding that Edwards failed to exhaust, the district court dismissed the case on summary judgment. Because we find no error in the district court's decision, the decision is affirmed.

## II. Background and Procedural History

It is undisputed that the Plan is an employee welfare benefit plan and that Edwards is a participant in the Plan, all within the meaning of ERISA. *See* 29 U.S.C. § 1002(1), (7). Edwards, an employee of the Wisconsin-based Briggs & Stratton Company ("Briggs & Stratton"), ceased working in November 2005 due to a variety of ailments, including cervical radiculopathy, bilateral carpal tunnel syndrome, and ulnar nerve compression. Edwards was treated by, inter alia, Dr. James Stoll, an orthopedic surgeon. On August 9, 2007, Edwards made a claim for disability retirement benefits under the Plan,

basing the claim upon Stoll's opinion that Edwards is totally and permanently disabled, cannot return to Briggs & Stratton, and cannot perform any work at all. The Plan retained its own medical consultant, Dr. Richard Fritz, a specialist in internal medicine, to evaluate Edwards's claim. Fritz opined that Edwards is not totally and permanently disabled. On September 26, 2007, the Plan denied Edwards's claim for disability retirement benefits and on September 29, 2007, Edwards was notified of the denial of her claim. The letter informing Edwards of the denial of her claim advised Edwards that she had 180 days from receipt of the letter to appeal the denial of benefits to the Plan's Retirement Committee. The requirement that an appeal from a denial of Plan benefits must be made within 180 days from receipt of a denial letter is contained in the Plan document.

On October 9, 2007, Edwards wrote to the Plan to request copies of the records relied upon by the Plan in denying her claim for benefits and advised the Plan that "[a]fter I get these things [the records], I'll decide whether or not to appeal." Upon receipt of the records as requested, Edwards retained counsel to bring an appeal to the Plan from the denial of her claim for benefits. On February 4, 2008, the Plan received a letter from Edwards's counsel requesting a copy of the Plan document and advising the Plan that Edwards's counsel would be filing an administrative appeal on Edwards's behalf "soon." On February 8, 2008, Elizabeth Mlekush, the Plan administrator, answered the letter, sending a copy of the Plan document as requested and advising

Edwards's counsel that Edwards's appeal letter must be received by the Plan by March 31, 2008.[1]

After receiving a vocational report, dated March 27, 2008, from Anne Repaci, Edwards brought her appeal to the Plan. Edwards's appeal letter was supported by Repaci's report and a medical assessment of Edwards by Stoll dated September 11, 2007, and opened by saying, "We [Edwards and her counsel] hereby appeal your September 26, 2007 decision." Unfortunately, Edwards's appeal letter was not received by the Plan until April 11, 2008, that is, eleven days after the March 31 deadline specified by Mlekush in her letter of February 8, 2008, and fifteen days after the actual deadline of March 27, 2008. In the appeal letter, Edwards acknowledged that her appeal was untimely, but offered no explanation for the delay in bringing the appeal. The Plan refused to consider Edwards's appeal on the grounds that the appeal was untimely. The letter informing Edwards of the original denial of her claim for benefits advised Edwards that she had the right to bring an action under ERISA following an adverse determination of her claim for benefits on appeal. On June 9, 2008, Edwards filed suit against the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) in federal district court in Milwaukee, Wisconsin. With the consent of the parties, the case was assigned to a magistrate judge for

---

[1] In fact, in her February 8 letter Mlekush overstated the appeal deadline by four days: 180 days from Edward's receipt of the original denial of benefits was March 27, 2008.

disposition. On cross-motions for summary judgment, the magistrate granted summary judgment for the Plan and denied Edwards's motion for summary judgment. This appeal followed.

### III. Analysis

As an initial matter, we note the applicable standard of review. A grant of summary judgment is reviewed de novo. *See Ruiz v. Continental Cas. Co.*, 400 F.3d 986, 989 (7th Cir. 2005). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the district court was faced with cross-motions for summary judgment, "our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

A denial of benefits normally is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In such a case, the denial of benefits is reviewed under an "arbitrary and capricious" standard. *Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502

F.3d 725, 727 (7th Cir. 2007).[2] Under the arbitrary and capricious standard, the reviewing court must ensure only that a plan administrator's decision "has rational support in the record." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006). "Put simply, an administrator's decision will not be overturned unless it is 'downright unreasonable.'" *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)). However, "[r]eview under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). Nevertheless, we will uphold the plan's decision "as long as (1) 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is based on a reasonable explanation of relevant plan documents,' or (3) the administrator 'has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (quoting *Exbom v. Central States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990)).

Under ERISA, "[a] civil action may be brought . . . by a participant . . . to recover benefits due to him under the

---

[2] Here it is undisputed that the Plan document vests the Plan administrator with discretion. Thus, the arbitrary and capricious standard applies.

terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although 29 U.S.C. § 1132(a)(1)(B) "provide[s] that an aggrieved party may file a civil action to redress alleged ERISA violations, [the statute] do[es] not state whether exhaustion of administrative remedies is a precondition to filing that action." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 466 (7th Cir. 1986). However, because ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, we have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute. *See Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991) (citing 29 U.S.C. § 1133).

The requirement of exhaustion of administrative remedies in ERISA cases serves several purposes. Exhaustion encourages informal, non-judicial resolution of disputes about employee benefits. "[T]he institution of . . . administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned." *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244-45 (7th Cir. 1983) (quoting *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)). "Congress intended fund trustees to have primary responsibility for claim processing, as

evidenced by the specific requirement in [ERISA] . . . of a claim and appeal procedure for every employee benefit plan. To make every claim dispute into a federal case would undermine the claim procedure contemplated by the Act." *Challenger v. Local Union No. 1 of Int'l Bridge, Structural & Ornamental Ironworkers*, 619 F.2d 645, 649 (7th Cir. 1980). "[T]he trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement . . . enhance[s] their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." *Kross*, 701 F.2d at 1245 (quoting *Amato*, 618 F.2d at 567).

Additionally, the requirement of exhaustion of administrative remedies helps to prepare the ground for litigation in case administrative dispute resolution proves unavailing. Compelling parties to exhaust administrative remedies can help a court by requiring parties, in advance of bringing suit, "to develop a full factual record" and by enabling the court to "take advantage of agency expertise." *Janowski v. International Bhd. of Teamsters Local No. 710 Pension Fund*, 673 F.2d 931, 935 (7th Cir. 1982), vacated on other grounds, 463 U.S. 1222 (1983). "[A] primary reason for the exhaustion requirement . . . is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies." *Kross*, 701 F.2d at 1245 (quoting *Amato*, 618 F.2d at 568). *See also Ames v. American Nat'l*

*Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999) (noting that, through internal plan procedures, "the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review").

"[T]he decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court . . . . [T]his determination will only be disturbed on appeal if the lower court has clearly abused its discretion—in other words, if the lower court's decision 'is obviously in error.'" *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997) (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)). *See also Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) ("[W]e review a district court's decision to dismiss a complaint on exhaustion grounds for an abuse of discretion."). An ERISA plaintiff's failure to exhaust administrative remedies may be excused where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 671 (7th Cir. 2004); *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir. 1997); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996); *Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 658-59 (7th Cir. 1992).

In this instance it is undisputed that Edwards's appeal from the Plan's original denial of benefits was untimely, nor does Edwards argue that she lacked meaningful access to review procedures or that pursuing administrative remedies would be futile. Instead

Edwards argues that the untimeliness of her appeal should be excused because she was in "substantial compliance" with administrative review procedures under the Plan. In general the doctrine of substantial compliance means that a plan administrator who has violated a technical rule under ERISA, such as regulations governing the contents of letters denying claims for benefits, may be excused for the violation if the administrator has been substantially compliant with the requirements of ERISA. *See, e.g., Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 693-94 (7th Cir. 1992); *Brown v. Retirement Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 535-36 (7th Cir. 1986). In cases in which the substantial compliance doctrine applies, a plan administrator, notwithstanding his or her error, is given the benefit of deferential review of the administrator's determination about a claim under the arbitrary and capricious standard (assuming, of course, that the plan document vests the administrator with discretion), rather than more stringent de novo review. *See, e.g., Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009).

Edwards has not cited any decision in which we have employed the substantial compliance doctrine to excuse an untimely appeal from an administrative denial of benefits by an ERISA plan. Instead, we have recognized that ERISA plans have an interest in "finality of decisions" regarding claims for benefits that militates against reopening a plan's administrative claim process willy-nilly. *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1047 (7th Cir. 2004). Correspondingly, we have held that an ERISA claimant's

failure to file a timely administrative appeal from a denial of benefits "is one means by which a claimant may fail to exhaust her administrative remedies." *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000). In the context of a previous case involving, as here, a plan that had fixed a 180-day deadline for filing administrative appeals, we held that "[u]nambiguous terms of a pension plan leave no room for the exercise of interpretive discretion by the plan's administrator*." Wagner v. Allied Pilots Ass'n Disability Income Plan*, 383 Fed. Appx. 565, 569 (7th Cir. 2010) (quoting *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 822-23 (7th Cir. 2007)).[3] Thus, "[t]he administrator must implement and follow the plain language of the plan, in so much as they are consistent with the statute. This includes a deadline that is consistent with the regulations governing ERISA claims." *Id.* (citation omitted).

In this case, the Plan has fixed a clear deadline of 180 days for filing administrative appeals from denials of benefits, and the Plan has the right to enforce that deadline. Also, though counsel for the Plan conceded at oral argument in this appeal that it is within the Plan administrator's discretion to entertain an untimely appeal, Ed-

---

[3] The 180-day deadline for filing administrative appeals under the Plan, as also in *Wagner*, is derived from a regulation promulgated by the United States Department of Labor pursuant to ERISA requiring that an ERISA plan "[p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination." 29 C.F.R. § 2560.503-1(h)(3)(i).

wards has never offered an explanation for the untimeliness of her appeal that would warrant such an exercise of discretion in her favor. Finally, it seems consistent neither with the policies underlying the requirement of exhaustion of administrative remedies in ERISA cases nor with judicial economy to import into the exhaustion requirement the substantial compliance doctrine. To so hold would render it effectively impossible for plan administrators to fix and enforce administrative deadlines while involving courts incessantly in detailed, case-by-case determinations as to whether a given claimant's failure to bring a timely appeal from a denial of benefits should be excused or not. Accordingly, we conclude that Edwards's failure to file a timely administrative appeal from the Plan's initial denial of benefits is not excused on grounds of substantial compliance.

Just as we decline to import the substantial compliance doctrine into the matter of administrative deadlines under ERISA, so too we find Edwards's reliance on Wisconsin's "notice-prejudice" statute to be misplaced. Under the statute in question, where a policy of liability insurance requires an insured to give notice of claims to an insurer, "failure to give any notice required by the policy within the time specified does not invalidate a claim made by the insured if the insured shows that it was not reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably possible." Wis. Stat. § 632.26(1)(b). The statute provides further that "[f]ailure to give notice as required by the policy . . . does not bar liability under the policy if the insurer was not prejudiced by the failure,

but the risk of nonpersuasion is upon the person claiming there was no prejudice." *Id*. § 632.26(2). Edwards argues that, as a matter of Wisconsin law, the Plan is required to show prejudice as a result of Edwards's delay in filing her administrative appeal before denying the appeal as untimely.

It is the case, of course, that in some instances a state notice-prejudice rule may require a plan administrator to show prejudice as a result of a participant's failure to give notice of a claim as required under a plan. *See UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 372 (1999) (applying California law). In this case, however, the Plan is not an insured plan, and the benefits at issue are disability benefits, not liability insurance, which is the type of insurance governed by the Wisconsin statute. Also, as the Plan points out, state notice-prejudice rules typically apply only to initial denials of benefits. "There is no . . . federal case that has applied a notice-prejudice rule outside the initial review context" and "[t]o extend the notice-prejudice rule to ERISA appeals would extend the rule substantially beyond its previous uses." *Chang v. Liberty Life Assurance Co. of Boston*, 247 Fed. Appx. 875, 878 (9th Cir. 2007). Like the *Chang* court, we are "not inclined to make such a significant and unprecedented extension of the rule." *Id*. Finally, as already has been noted, Edwards never has explained the reason for the untimeliness of her administrative appeal and therefore has not shown either that it was not reasonably possible to give notice within the prescribed time or that notice was given as soon as reasonably possible.

Thus, the Wisconsin notice-prejudice rule does not render Edwards's administrative appeal timely.

To the extent Edwards contends that the letter she wrote to the Plan in October 2007 and the letter her counsel wrote to the Plan in February 2008 should be construed as appeals or at least as having put the Plan under a duty to inquire whether Edwards wished for the letters to be construed as appeals, we find no merit in this contention. It is true that, in some instances, a plan participant's letter to a plan may be construed as an appeal. *See, e.g., Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 826-27 (10th Cir. 2008) (concluding that the defendant insurer was on notice that the claimant was appealing the insurer's decision to deny benefits where a letter from the claimant's counsel to the insurer clearly stated that the claimant was appealing the insurer's decision to deny payment of benefits and outlined the general basis of the claimant's appeal, even though counsel also requested the entire claim file and requested sixty days to present additional information to the insurer). In this case, however, the letters at issue cannot reasonably be construed as notices of appeal.

Edwards's October 2007 letter, as already has been discussed, merely advised the Plan that, once Edwards received copies of the records relied upon by the Plan in denying Edwards's original claim for benefits, Edwards would "decide whether or not to appeal." Similarly, the February 2008 letter sent by Edwards's counsel to the Plan only advised the Plan that Edwards would bring an appeal "soon." Thus, the October 2007

letter simply suggested that Edwards might bring an appeal, depending on the contents of the administrative record, while the February 2008 letter unambiguously expressed an intention to appeal, but was not itself a request for review. *See Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009) (a letter to a plan that "merely expressed an 'intention to appeal'" was not itself an appeal). In sum, neither letter reasonably could be regarded by the Plan administrator as a notice of appeal.[4]

Finally, with respect to Edwards's claim that the Plan's refusal to entertain her administrative appeal was motivated by a conflict of interest, we are cognizant, of course, of the conflict of interest that exists when, as in

---

[4] As to whether either Edwards's October 2007 letter or her counsel's February 2008 letter put the Plan under a duty to inquire whether Edwards wished for one or both of the letters to be construed as an appeal, we find that they did not. It is the case, as Edwards points out, "that fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004) (holding that a plan administrator was arbitrary and capricious in denying a plan participant's claim that use of prescription narcotics rendered the participant disabled from the performance of his occupation, and thus eligible for benefits under the plan, without investigating the claim). However, neither of the letters at issue put any sort of evidence before the Plan.

this case, a plan administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). In such cases, the standard of review remains the same, that is, arbitrary and capricious; as the *Glenn* Court noted, citing *Firestone*, precisely because it is quite common for an ERISA plan administrator also to be the payor of claims, courts should be hesitant to "adopt[ ] a rule that in practice could bring about near universal review by judges *de novo—i.e.*, without deference—of the lion's share of ERISA plan claims denials." *Id*. at 116. *See also Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009) ("While we must take [the plan's] conflict of interest into account, [the plan administrator] remains entitled to the deference normally afforded under the arbitrary and capricious standard.").

In the wake of *Glenn*, we have acknowledged that, notwithstanding the deference owed to the decisions of an ERISA plan administrator under *Firestone*, "a conflict of interest . . . is a given in almost all ERISA cases." *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009). "It is thus not the existence of a conflict of interest . . . but the *gravity* of the conflict, as inferred from the circumstances, that is critical." *Id*. (emphasis in original). We have held also,

> [T]he gravity of the conflict, and thus the likelihood that the conflict influenced the plan administrator's decision, should be inferred from the circumstances of the case, including the reasonableness of the pro- cedures by which the plan administrator decided

the claim, any safeguards the plan administrator has erected to minimize the conflict of interest, and the terms of employment of the plan administrator's staff that decides benefit claims.

*Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 482 (7th Cir. 2009) (citing *Marrs*, 577 F.3d at 789). In *Glenn* the Court suggested that a plan's conflict of interest might prove to be "tiebreaking" in a case where "circumstances suggest a higher likelihood that [the conflict] affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." 554 U.S. at 117.

In this case, as discussed, the Plan adopted a reasonable deadline for the filing of administrative appeals from denials of benefits, and it likewise was reasonable for the Plan to enforce that deadline in Edwards's case, given that, as also has been discussed, Edwards never offered any explanation for her delay in filing her appeal. With respect to safeguards erected by the Plan to minimize conflicts of interest and the terms of employment of the Plan administrator, the evidence is that Mlekush, the Plan administrator, has no contact with Briggs & Stratton's financial advisors and receives no incentives to deny claims. As the *Glenn* Court observed, a plan's conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks

that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." 554 U.S. at 117. In sum, we find that the Plan's conflict of interest is not impermissibly grave. Said differently, this is not the sort of close case in which the Plan's conflict of interest tips the balance in Edwards's favor.

We conclude that the Plan's refusal to entertain Edwards's untimely administrative appeal was not arbitrary and capricious, nor was it an abuse of discretion for the district court to require exhaustion of administrative remedies in this case. Because Edwards failed to exhaust her administrative remedies before bringing suit under ERISA, the district court properly granted summary judgment in favor of the Plan.[5]

---

[5] Because we find that Edwards failed to exhaust her administrative remedies, we need not reach the issue of whether the Plan's denial of Edwards's original claim for benefits was arbitrary and capricious. We note that after oral argument in this appeal, Edwards submitted to us pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure and Rule 28(e) of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit a copy of the recent decision of the Supreme Court of the United States in *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011). In *Henderson*, the Court found that a provision of the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988) (codified, as amended, in various sections of 38 U.S.C.), governing the time for bringing appeals to the United States Court of Appeals for Veterans Claims was not jurisdictional in nature. *See* 131 S. Ct. at 1206. It is not at all clear what relevance, if any, *Henderson* has to this ERISA case.

(continued...)

## IV. Conclusion

The decision of the district court granting summary judgment in favor of the Plan as to Edwards's claim under ERISA and denying Edwards's motion for summary judgment is AFFIRMED.

---

[5] (...continued)
We have never treated the requirement of exhaustion of administrative remedies in ERISA cases as being jurisdictional and instead, as already has been noted, we consistently have held that the decision to require exhaustion in a given case is committed to a district court's discretion.

---