[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11208
_____

D.C. Docket No. 1:02-cv-22027-FAM

AMERICAN DENTAL ASSOCIATION,
on its own behalf and in an associational
capacity on behalf of its members,
DMD FRANK S. ARNOLD,
DDS JAMES SWANSON,
individually and on behalf of
all others similarly situated,
DDS DAVID W. RICHARDS,

Plaintiffs - Appellants,

versus

WELLPOINT HEALTH NETWORKS INC.,
BLUE CROSS OF CALIFORNIA,

Defendants - Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 23, 2012)

Before DUBINA, Chief Judge, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

The issue presented in this appeal is whether a periodontist initiated an administrative appeal when he sent a letter to an insurer requesting information about the insurer's partial reimbursement of a patient, before the doctor filed a complaint against the insurer under the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1001 et seq. Dr. David W. Richards filed this putative class action against WellPoint Health Networks and alleged that WellPoint uses a faulty method in determining the usual, customary, and reasonable amount for reimbursement of patients for services provided by dentists. WellPoint argues that Richards failed to exhaust his administrative remedies before filing his complaint, and Richards responds that he sought administrative review by sending WellPoint a letter that requested the information underlying its decision. The district court entered summary judgment in favor of WellPoint on the ground that Richards's request for information failed to seek administrative review of the partial reimbursement. Because we conclude that Richards failed to exhaust his administrative remedies, we affirm.

## I.    BACKGROUND

Richards is a periodontist in San Diego, California. He is considered an "out-of-network" provider because he has not entered a contract with WellPoint. As an "out-of-network" provider, Richards may charge WellPoint subscribers a customary fee for which WellPoint reimburses the subscribers at a fixed rate.

In September 2001, Richards provided a WellPoint subscriber with a comprehensive exam, for which Richards charged him $98. In its "Explanation of Benefits," WellPoint stated it would reimburse the patient only $57. Both Richards and WellPoint agree that the $57 figure comes from the usual, customary, and reasonable charges provided by WellPoint. The "Explanation of Benefits" explained to the patient that "[s]hould you believe this claim has been wrongfully denied or rejected, or you need further clarification, please contact the WellPoint Dental Customer Service Department . . . ." The "Explanation of Benefits" further provided that a "dental provider may also file a reconsideration on your behalf."

On November 9, 2001, Richards wrote WellPoint a letter that requested further information regarding the partial denial of benefits:

> I recently received payment and an explanation of benefits from WellPoint for the services we provided to one of your subscribers . . . . As I am not a preferred provider for WellPoint the procedure was billed based on our regular fee schedule. WellPoint, however, made payment on a reduced fee stating that the billed fee exceeded the "customary and reasonable allowance for the provided procedure." Please provide me with documentation of the data used to calculate WellPoint's UCR as this reduction places my office in a difficult situation with regards to the patient.

WellPoint received the letter and labeled it an "Inquiry" to "explain [uniform, customary, and reasonable rates]."

WellPoint responded to Richards in a letter dated December 1, 2001, about its usual, customary, and reasonable rates:

3

Dear Dr. Richards:

Your request for additional information regarding the determination of usual, customary, and reasonable (UCR) has been refereed [sic] to me.

Please be advised that payments are made in accordance with the HIAA [Health Insurance Association of America] fee schedule. We use data received from Ingenix, which is updated once a year and is based on actual claims data received from numerous insurance companies, and is calculated based on the provider's zip codes.

We hope this clarifies the situation. If you have any questions, please do not hesitate to contact our Customer Service Department . . . .

Richards made no further attempts to correspond with WellPoint.

Under its "Prudent Buyer Choice Dental Plan," WellPoint will provide written notice if a claim is denied in whole or part. After the denial of a claim, the claimant has 180 days to appeal. The appeal must be in writing, and WellPoint is required to notify the claimant of its decision within 60 days of WellPoint receiving the appeal.

In 2002, the American Dental Association and three dentists, including Richards, filed a class-action suit in the Northern District of Illinois against WellPoint and its subsidiary, Blue Cross of California. They alleged WellPoint used a faulty method in determining the usual, customary, and reasonable amount for reimbursement of patients for services provided by dentists. The Joint Panel for Multidistrict Litigation transferred the action to the Southern District of

Florida, where it was eventually designated a "tag-along" to the matters consolidated into In re Managed Care Litigation.

WellPoint filed a motion for summary judgment on the ground that Richards had failed to exhaust his administrative remedies. A magistrate judge recommended granting that motion on the ground that Richards had failed to exhaust his administrative remedies and his failure could not be excused as futile. The magistrate judge concluded that the letter Richards sent to WellPoint failed to "convey a demand for review and an affirmative challenge to [WellPoint] of [its] decision to reduce the payment due . . . ." The magistrate judge also explained that Richards failed to offer any evidence that he was prevented from submitting an appeal to WellPoint. The district court adopted the report and Recommendation of the magistrate judge and granted summary judgment in favor of WellPoint.

## I.    STANDARD OF REVIEW

Two standards of review govern this appeal. This Court "reviews de novo a district court's grant of summary judgment, applying the same legal standards as the district court." J.F.K. v. Troup Cnty. Sch. Dist., 678 F.3d 1254, 1255 (11th Cir. 2012). We "will affirm if, after construing the evidence in the light most favorable to the non-movant, [we find] that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Id. A disputed fact is "material" if, "under the applicable substantive law, it might affect the outcome of

the case." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004). "The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which we review only for a clear abuse of discretion." Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000).

## II.    DISCUSSION

This appeal turns on whether the letter Richards sent WellPoint on November 9, 2001, sought administrative review of the partial reimbursement of his patient. Richards acknowledges that he was obligated to exhaust any administrative remedies before filing suit. See Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1223 (11th Cir. 2008). We conclude that Richards failed to exhaust his administrative remedies.

The Seventh Circuit has held that a letter requesting information about a denial of benefits is not an administrative "appeal." In Edwards v. Briggs & Stratton Retirement Plan, the plaintiff, upon having a claim for reimbursement denied by the insurer, wrote a letter requesting copies of the records the insurer relied upon in denying her claim. 639 F.3d 355, 358–59 (7th Cir. 2011). The letter stated that the plaintiff would decide "whether or not to appeal" after reviewing the records. Id. at 359. The Seventh Circuit held that this letter could not "be construed as [a notice] to appeal." Id. at 364. It differentiated between letters that

6

"request a review" and those that suggest a party might bring an appeal.  Id.  The former variety triggers the administrative process, but the latter does not.  See id.

Like the letter in Edwards, the letter Richards sent WellPoint did not challenge the partial denial of benefits nor did it request that WellPoint perform any kind of review.  Richards's letter instead sought only information about the decision by WellPoint.  A "rear-guard attempt to turn a request for information . . . into a demand for administrative review must be rejected."  Powell v. AT&T Commc'ns, Inc., 938 F.2d 823, 827 (7th Cir. 1991).  The district court correctly concluded that the letter Richards sent WellPoint was not an administrative "appeal."

The requirement of exhaustion may be excused if resorting to the administrative remedies would be futile, but Richards cannot prove futility.  See Counts v. Am. Gen. Life & Accident Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997).  "[B]are allegations of futility are no substitute for the 'clear and positive' showing of futility required before suspending the exhaustion requirement."  Bickley v. Caremark Rx, Inc., 461 F.3d 1325, 1330 (11th Cir. 2006) (quoting Springer v. Wal-Mart Assocs. Group Health Plan, 908 F.2d 897, 901 (11th Cir. 1990)).  Richards failed to initiate the administrative review process, leaving this Court to speculate as to whether WellPoint would have conducted a thorough and adequate review of a hypothetical administrative appeal filed by Richards.  Mere speculation

is not enough to fulfill the futility exception to the requirement of exhaustion of administrative remedies.  The district court correctly concluded that Richards failed to establish that pursuing the administrative process provided by WellPoint was futile.

### III.    CONCLUSION

We **AFFIRM** the summary judgment in favor of WellPoint.