# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3524

DEBORAH SCHORSCH,

*Plaintiff-Appellant*,

*v.*

RELIANCE STANDARD LIFE INSURANCE CO.,
an Illinois Corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-03740—**Robert W. Gettleman**, *Judge.*

ARGUED SEPTEMBER 8, 2011—DECIDED AUGUST 28, 2012

Before MANION, ROVNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* The Employee Retirement
Income Security Act of 1974 (ERISA) allows beneficiaries
of plans governed by the statute to bring civil actions
to recover benefits that are due to them. 29 U.S.C.
§ 1132(a)(1)(B). But in enacting ERISA, Congress also
mandated internal claim review procedures. 29 U.S.C.
§ 1133(2). Recognizing that Congress gave the primary

responsibility for processing claims to ERISA plans as opposed to federal courts, we have held that district courts have discretion to require the exhaustion of administrative remedies as a precondition to such suits. *See Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). Yet there are exceptions that may excuse a failure to exhaust. We consider here whether the content of a termination notice, specifically the absence of particular information, caused the beneficiary's failure to exhaust and whether the defendant is estopped from taking advantage of that failure. The district court found that the beneficiary offered no evidence of reasonable reliance on the absent information and that even if the notice was deficient, the alleged deficiencies were not material. Finding no abuse of discretion, we affirm.

## I. Background

Deborah Schorsch enrolled in September 1991 in a long-term group disability insurance plan provided through her employer United Conveyor Corporation. Reliance Standard Life Insurance Company ("Reliance") provided coverage for the plan. According to the summary plan description, United Conveyor was the plan sponsor and administrator. Yet the terms of the policy issued by Reliance governed the plan's administration, and United Conveyor delegated authority to determine eligibility for benefits to Reliance as the claims administrator. The policy did not give Reliance discretionary authority to determine benefit eligibility or construe plan terms.

For unknown reasons, United Conveyor apparently never provided Schorsch with the summary plan description or any document explaining that ERISA governed the plan.

On August 1, 1992, a car struck the passenger side of the vehicle in which Schorsch was a passenger. Schorsch suffered a contusion and spinal cord damage, which caused her disability. Her symptoms include chronic pain syndrome, restricted movement, incontinence, an inability to concentrate, and fatigue. Schorsch also suffers from the side effects of her pain medicine. United Conveyor submitted a claim to Reliance for long-term disability benefits on Schorsch's behalf. Reliance approved the claim and Schorsch began receiving long-term disability benefits on January 29, 1993. The plan provides that for the first 60 months, "total disability" meant that Schorsch could not perform the material duties of her regular occupation. After 60 months, "total disability" meant that Schorsch could not perform the material duties of any occupation as reasonably allowed by her education, training, or experience. On May 16, 1998, Reliance notified Schorsch that her condition satisfied the more stringent definition of total disability. Reliance told her she was eligible to receive disability benefits until she reached the age of 65 on January 27, 2018, or until her condition no longer satisfied the definition of total disability.

On May 19, 2006, at Reliance's request, Schorsch underwent an independent medical exam with Dr. Richard S. Tuttle, who produced a five-page report finding her

capable of performing a full-time medium duty job. The report listed as sources of information (1) Schorsch's account of her primary history, (2) various medical records, and (3) "some surveillance transcripts from March 2006." The surveillance source appears to reference a report from an investigation firm that observed Schorsch's home for three days in March 2006. Based on the exam, Dr. Tuttle found "little objective findings to support any significant restrictions or limitations or any significant impairment." But Dr. Tuttle also mentioned in the next sentence that "surveillance" revealed that Schorsch "appears to be working out of her house, doing her childcare operation, and appears to be actively employed at this point, regardless." He then stated that based on the exam, he saw "no functional impairment" and "no significant limitations or restrictions" and opined that Schorsch could resume regular employment. Dr. Tuttle did not mention that in March 2006 Reliance sent vocational rehabilitation specialist Daniel Rauch to Schorsch's home to interview her. Rauch did not report observing a babysitting service but recommended in his report that Reliance should update Schorsch's medical records and ask her treating physician to comment on her ability to work.

Reliance notified Schorsch by letter dated June 13, 2006, that it would terminate her disability benefits on June 29, 2006, because based on her file's medical information, namely Dr. Tuttle's exam, it determined she could work full-time and thus was no longer totally disabled. The letter stated that Reliance's vocational staff reviewed her "complete claim file" and determined

based on her medical condition and past training, educa-tion, and experience that she qualified for a variety of jobs. The notice repeated that the decision was made "based on the information contained in your file and the policy provisions applicable to your claim" and went on to explain that:

> Our determination regarding whether you meet your group policy's definition of disability is, and must be, based on the medical documentation in your claim file. We have no basis on which to measure subjective complaints or medical opinions that are not substantiated by the med-ical findings. We must determine if the medical information documents the presence of a physical or mental condition limiting your ability to per-form your own or regular occupation.

The notice did not mention the surveillance report, but stated that Schorsch could "request a review of this denial by writing to" Reliance's address and that:

> The written request for review must be sent within 60 days of receipt of this letter and state the reasons why you feel the claim should not have been denied. Include any additional docu-mentation which you feel will support your claim. We will treat the submission of any addi-tional documentation as a request for review unless specifically otherwise instructed. You or your duly authorized representative is also entitled to review the pertinent documents upon which our determination was predicated.

On August 3, 2006, only nine days before the 60-day deadline expired on August 12, Schorsch's counsel sent Reliance a letter indicating that he represented:

> your insured, Deborah Schorsch, in connection with your revocation of disability payments to her under the captioned policy. We will ask that you review the revocation decision. However I am still waiting for certain documents and medical records for review before I can provide you with a detailed analysis of my client's position at this time.

Counsel wrote that he hoped to have the materials he needed "in the next few weeks and I should have a more detailed analysis presented to you for your consideration before the end of August." He asked Reliance to "please consider this notice of an intent to ask for your reconsideration, which is an option indicated in your June 13, 2006 letter." But neither Schorsch nor her attorney ever submitted a request for review.

Reliance responded in a letter dated February 13, 2007, stating that although "Ms. Schorsch may have intended to ask for a reconsideration, no such letter of appeal was ever received by" Reliance "and the deadline for asking for an appeal has long since passed. As such, our decision to terminate Ms. Schorsch's claim is final and she has no further avenues of administrative appeal available to her under the terms of her Policy." Counsel responded on April 5, 2007, advising Reliance that Illinois law, not ERISA, governed the policy, and that Schorsch never received an ERISA plan. He said

that "[t]he delay in following up on my August 3, 2006 [letter] was due mostly to my trial schedule." Counsel wrote that the decision to terminate Schorsch's benefits breached the policy and that Schorsch would pursue her remedies under Illinois law by suing unless "you wish to reconsider receiving a different analysis, please advise."

On May 22, 2009, Schorsch's complaint for breach of contract and vexatious and unreasonable denial of benefits under Illinois insurance law was filed in Illinois state court. Reliance removed the action to federal district court and Schorsch filed an amended complaint seeking to recover the same long-term disability benefits under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). During discovery, Reliance admitted that it had lost the administrative record relating to Schorsch's claim. Eventually Reliance produced some "computer screens" but it never found the documents it used in deciding to terminate Schorsch's benefits. In response to Schorsch's interrogatories, Reliance stated, "Dave Lembach, Vocational Rehabilitation Specialist . . . conducted the vocational evaluation referenced in" the June 13 letter. Yet in Lembach's deposition, he first testified that he did not make "any decision as to whether she could perform a particular occupation," and later said he did not recall making the evaluation referenced in Reliance's interrogatory answer. After discovery, the district court granted Reliance's motion for summary judgment on the ground that Schorsch failed to exhaust her administrative remedies. *Schorsch v. Reliance Standard Life Ins. Co.*, No. 09 C

3740, 2010 WL 3893914 (N.D. Ill. Sept. 29, 2010) (unpublished opinion and order). Schorsch appealed.

## II. Analysis

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Schorsch. *See Fleming v. Livingston County, Ill.*, 674 F.3d 874, 878 (7th Cir. 2012). We will affirm if there is "no genuine dispute as to any material fact" and Reliance is "entitled to judgment as a matter of law." *See id.*

The parties dispute the district court's exercise of discretion in dismissing Schorsch's claim for failure to exhaust her administrative remedies. As the district court recognized, Schorsch does not seriously contest the fact that she failed to timely request a review. In fact, she never requested a review. Instead, she argues that a series of irregularities in Reliance's process for terminating her benefits denied her meaningful access to review and that as a result, Reliance is estopped from benefitting from her failure to exhaust. Accordingly, we consider whether the district court abused its discretion in requiring "exhaustion as a prerequisite to bringing suit." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 361 (7th Cir. 2011) (quoting *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997)). We will reverse only if the district court's decision is "obviously in error." *Id.* (quoting *Salus*, 104 F.3d at 138).

Congress established the administrative claims resolution process to "reduce the number of frivolous law-

suits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned." *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1244-45 (7th Cir. 1983) (quoting *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)). Although ERISA does not require administrative exhaustion as a prerequisite to suit, "we have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute." *Edwards*, 639 F.3d at 360. The exhaustion requirement gives force to Congress's intent in establishing the administrative claims resolution process by serving the objectives noted above. *Id.* at 360-61. That said, courts may excuse a failure to exhaust administrative remedies "where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile." *Id.* at 361.

Schorsch argues that Reliance should be estopped from asserting her failure to exhaust as a defense. To invoke estoppel, Schorsch must show, *inter alia*, that Reliance knowingly misrepresented or concealed a material fact, that she did not know the truth, and that she reasonably relied on the misrepresentation or concealment to her detriment. *See, e.g.*, *Loyola Univ. of Chi. v. Humana Ins. Co.*, 996 F.2d 895, 902 (7th Cir. 1993). Schorsch cannot circumvent ERISA's administrative remedies by simply pointing to errors in Reliance's claims termination process. Flaws in Reliance's termination notice and other errors become relevant only if Schorsch reasonably relied on them in failing to request a review of its decision

to terminate her disability benefits, *see id.*, or if Reliance's missteps denied her meaningful access to a review, *see Edwards*, 639 F.3d at 361. (She doesn't allege that pursuing a review would have been futile.)

Schorsch's first argument for reasonable and detrimental reliance is that Reliance's June 13 letter misrepresented that her "complete claim file" was "reviewed by our vocational staff" and that it failed to disclose that the "real basis" for terminating benefits was the surveillance report claiming she ran a babysitting service. She also suggests that the notice was deficient in failing to disclose Rauch's written report, which didn't recommend terminating benefits. But Reliance had a good basis for its decision to terminate benefits, even if it didn't disclose every piece of information it relied on to Schorsch.

Reliance based its decision in part on Dr. Tuttle's May 19, 2006, examination of Schorsch. Dr. Tuttle conducted a thorough physical examination and documented his observations and findings, including that Schorsch did "not appear to be in any significant pain or distress." He wrote that she had "no significant objective findings, really the only finding is related to subjective complaints of pain" and "there are no significant pain behaviors or sitting intolerance or any significant findings to any significant pain condition or any significant spinal cord injury." Based on his exam, Dr. Tuttle found "little objective findings to support any significant restrictions or limitations or any significant impairment." He saw "no functional impairment" and opined "with a rea-

sonable degree of medical certainty that Ms. Schorsch can resume regular employment at a medium duty level for an 9-hour day or 40 hour work-week." To be sure, Dr. Tuttle referred to the surveillance of March 2006, but his report reveals that this was done to corroborate his findings that she had no significant limitations or restrictions. His opinion was based on his examination of Schorsch. Thus, Schorsch's suggestion that the surveillance report was the only basis for Reliance's termination decision is unsupported by the record.

Schorsch points to several cases, *e.g.*, *Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 628 (7th Cir. 2005), where we found that denial notices failed to substantially comply with ERISA's statutory and regulatory requirements. But they are of little assistance here because the claimants in those cases exhausted their administrative remedies. *See id.* at 625-26. These cases suggest that Reliance's termination notice may have been less than perfect, but deficiencies in the notice would not necessarily excuse Schorsch's failure to exhaust her administrative remedies. Nor does *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231 (7th Cir. 1997), assist Schorsch. There, the claimant alleged that she was excused from the exhaustion requirement because she was never informed of the internal administrative appeals process. *Id.* at 1236, 1238. Schorsch was informed of her right to seek review.

And Reliance provided Schorsch with adequate notice of the reasons for its decision and the process for review. Its letter informed Schorsch that it would terminate

her disability benefits based on the medical information in her file, namely Dr. Tuttle's exam, applicable policy provisions, Reliance's review of her complete claim file, and its determination that she could work full-time and was no longer totally disabled. The letter told her that she could submit a "written request for review," stating "the reasons why you feel the claim should not have been denied. Include any additional documentation which you feel will support your claim." It also notified her that she or her representative was "entitled to review the pertinent documents upon which our determination was predicated." Thus, Reliance's termination letter gave Schorsch a "reasonable opportunity" to provide additional documentation to support her claim and seek a review of its decision. *See Aschermann v. Aetna Life Ins. Co.*, No. 12-1230, 2012 WL 3090291, at *4-*6 (7th Cir. July 31, 2012). Nothing in Reliance's notice prevented Schorsch from requesting a review.

Yet even assuming the worst about Reliance's process—as Schorsch claims, the company "basically lied in its June 13, 2006 letter" that it performed a vocational assessment and that Reliance actually based its decision on the surveillance report as opposed to her medical information — Schorsch fails to show how she reasonably relied on those alleged misrepresentations. She claims she would have immediately contested the decision had she known the circumstances behind the vocational assessment or that Dr. Tuttle thought she ran a baby-sitting business from her home. But this after-the-fact claim does not show that had she known these alleged defects in Reliance's review process, she would have

acted differently. Schorsch could have raised these alleged defects in the administrative review process. Indeed, the statutorily mandated administrative review process best addresses such claims, which is one of the reasons exhaustion is required. *See Edwards*, 639 F.3d at 360. Schorsch obviously could not contest what she did not know, but the termination notice gave her and her counsel an opportunity to "review the pertinent documents upon which" Reliance made its decision. Because Schorsch failed to exercise that option, she cannot now claim that had she known certain details, material or otherwise, she would have requested review of Reliance's decision to terminate her benefits.

Schorsch's second argument is that Reliance's stated 60-day deadline to appeal was incorrect because the 2002 amendments to the regulations provide for 180 days to appeal an adverse determination. *See* 29 C.F.R. § 2560.503-1(h)(3)(i). Reliance maintains that it relied on the older regulations providing for 60 days because the 2002 regulations only apply to "claims filed under a plan on or after January 1, 2002," 29 C.F.R. § 2560.503-1(o)(1), and Schorsch filed her original claim well before then. We need not decide if the new regulations apply to appeals made after 2002 regarding adverse decisions of pre-2002 claims. Even if they do apply and Reliance's letter should have given Schorsch 180 days to appeal, she has not shown how that would have made any difference in her failure to file a request for a review. Simply stated, Schorsch never requested review. The same goes for her rather skeletal argument regarding the inadequate notice of ERISA rights. Schorsch wholly

fails to explain how she could have reasonably relied on the absence of information regarding her right to sue under ERISA in failing to seek an administrative review.

Schorsch also argues that Reliance's loss or destruction of the administrative record was a misstep that excuses her failure to seek review. But she has not shown how Reliance benefitted from the loss or destruction of the administrative record. Nor has she shown that she could have relied on that future occurrence in failing to seek review years earlier. Reliance's loss of the administrative record is regrettable, but we cannot see how it had any effect on Schorsch's failure to seek review years earlier.

Similarly, the suggestion that Reliance's failure to tell Schorsch or her counsel that ERISA governed the policy is also a non-starter. The plan administrator under 29 U.S.C. § 1002(16)(A) is the person designated by the terms of the plan or the plan sponsor if the plan does not designate an administrator. Here, the summary plan description identifies United Conveyor as the plan administrator. We have long refused to attribute an employer's behavior to an insurer because the employer is not the insurer's agent. *Sur v. Glidden-Durkee, a div. of S. C. M. Corp.*, 681 F.2d 490, 493 (7th Cir. 1982) (refusing to impute employer's misrepresentations to insurer because an employer is not the insurer's agent); *Metro. Life Ins. Co. v. Quilty*, 92 F.2d 829, 832 (7th Cir. 1937) (noting that "the employer does not act as agent for the insurer"). United Conveyor as the plan administrator had the responsibility of providing Schorsch with a summary

plan description, 29 U.S.C. §§ 1021(a), 1022; *see also CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S. Ct. 1866, 1877 (2011) ("ERISA § 102(a) . . . obliges plan administrators to furnish summary plan descriptions"), and we will not impute its apparent and unfortunate failing to Reliance.

Schorsch maintains that Reliance failed to establish or follow reasonable claims procedures under 29 C.F.R. § 2560.503–1(l) and therefore she should "be deemed to have exhausted the administrative remedies available under the plan." *Id.* Section 2560.503–1(l) applies "on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." The Labor Department has explained that the provision was intended to strip judicial deference from decisions made in the absence of minimal procedural protections. 65 Fed. Reg. 70246–01, 70255 (Nov. 21, 2000). "At a minimum, claimants denied access to the statutory administrative review process should be entitled to take that claim to a court" because "[c]laimants should not be required to continue to pursue claims through an administrative process that does not comply with the law." *Id.* at 70256. Section 2560.503–1(l) assumes claimants attempted to exhaust their administrative remedies but the lack of a reasonable claims procedure blocked "a decision on the merits of the claim." Schorsch, who never attempted to exercise her opportunity to seek review, fails to show how Reliance denied her access to its administrative review process. Reliance's termination notice told her how and where she could request a review of its decision and the allotted period in which she could "state the

reasons why you feel the claim should not have been denied." And Schorsch could have requested the documentation underlying Reliance's decision.

Finally, Schorsch argues that Reliance should not be permitted to take advantage of the exhaustion doctrine because it was intended to benefit a fiduciary that conducts itself in full compliance with ERISA. We do not condone Reliance's missteps—particularly the loss of the administrative record, the confusion over who performed her vocational assessment, and the impression it gave Schorsch that its decision was based only on her medical records when in fact the surveillance report suggesting she ran a babysitting service influenced the decision by some measure. But Schorsch cannot show how these problems caused her failure to seek review of Reliance's termination decision. The congressionally mandated internal claims resolution process is the first stop in ERISA's scheme for addressing such disputes. Schorsch never followed Reliance's instructions for seeking review, and she does not show how she reasonably relied on any misrepresentation or lack of information in failing to exhaust her administrative remedies. Thus, the district court did not abuse its discretion in requiring exhaustion.

### III.  Conclusion

We AFFIRM the district court's judgment.