> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted April 13, 2017[*]
Decided April 18, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 16-2012

| | |
|---|---|
| JAMES B. SUMPTER, | Appeal from the United States |
|     *Plaintiff-Appellant*, | District Court for the Southern District |
| | of Indiana, Indianapolis Division. |
|     *v.* | |
| | No. 1:13-cv-00347-TWP-DKL |
| METROPOLITAN LIFE INSURANCE | |
| COMPANY, | Tanya Walton Pratt, |
|     *Defendant-Appellee*. | *Judge*. |

## O R D E R

This litigation represents the latest effort by James Sumpter to receive a disability benefit that his former employer, Delphi Automotive Systems, did not offer as part of its employee welfare benefits plan when he became disabled. He now seeks recovery against the plan's claims administrator, Metropolitan Life Insurance Company, on the grounds that it wrongly denied him benefits and breached fiduciary duties arising under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461.

---

[*] We have agreed to decide this case without oral argument because the appeal is frivolous. See FED. R. APP. P. 34(a)(2)(A).

Sumpter's contentions are frivolous, so we affirm the district court's grant of summary judgment for MetLife.

General Motors hired Sumpter as an electrical engineer in 1991. A year later GM circulated a "summary plan description" detailing the disability benefits available to its employees. This document provided that employees who became disabled before accruing ten years of service (when they would be eligible for long-term disability benefits through retirement age) could elect to receive an early payout of up to $100,000 from their GM-sponsored life-insurance policies after exhausting their short-term disability benefits. GM eliminated the early-payout option from its plan in 1994, though in his response to MetLife's motion for summary judgment, Sumpter denies receiving notice of the change. In 2000, after the division of GM that employed Sumpter was spun off as Delphi, the new company issued plan documents that also omit the early-payout benefit. Again, Sumpter denies receiving a copy of Delphi's plan, and he says that Delphi employees were told they should rely on their plan documents from GM.

In December 2000, after Delphi issued its new plan documents and before Sumpter acquired ten years of service, he became disabled and stopped working for Delphi. He began receiving short-term disability benefits in 2002, and two years later he requested the early-payout benefit pursuant to GM's 1992 plan. MetLife responded by sending a form for Sumpter to complete. He says it was the wrong form, but there is no evidence that he asked MetLife for a different form or completed and returned the one he was given. MetLife did not take any action until Sumpter again requested the early-payout benefit in March 2009. This time MetLife denied his claim on the basis that the plan adopted by Delphi in 2000 (before Sumpter became disabled) excludes that benefit. Sumpter submitted an administrative appeal, which MetLife rejected in March 2010. Later that year, Sumpter exhausted his short-term disability benefits and began receiving supplemental benefits based on unrelated coverage he had purchased while working for Delphi.

Meanwhile, Sumpter also was fighting to collect the early-payout benefit directly from Delphi, which had been in Chapter 11 bankruptcy in the Southern District of New York since 2005. In July 2009, Sumpter filed in the bankruptcy court a claim for $98,000, the value he assigned to the early-payout benefit. The bankruptcy court disallowed this claim, and later Delphi emerged from bankruptcy as DPH Holdings Corporation. See *Sumpter v. DPH Holdings Corp.* (*In Re DPH Holdings Corp.*), 468 B.R. 603, 605–08 (S.D.N.Y. 2012).

Sumpter then brought this ERISA suit in the Southern District of Indiana against DPH, Delphi's Disability Benefits Program Plan, and MetLife. DPH protested to the bankruptcy court, which concluded that the Indiana litigation amounted to a collateral attack on its previous orders and enjoined Sumpter from pursuing any claims against DPH or the plan. See *Sumpter v. DPH Holdings Corp.*, Nos. 13 Civ. 6432 (PAC) & 13 Civ. 8987 (PAC) (S.D.N.Y. Sep. 5, 2014) (affirming bankruptcy court's injunction), *appeals dismissed*, Nos. 14-3629 & 14-3738 (2d Cir. Dec. 2, 2014) (summarily dismissing appeals under 28 U.S.C. § 1915(e)). Sumpter then amended his complaint in the Indiana litigation to include only claims against MetLife, which the bankruptcy court had excluded from its injunction. Sumpter alleged that MetLife wrongfully refused to pay the early-payout benefit and breached its fiduciary duties by (1) not alerting him that GM eliminated the benefit, (2) taking too long to process his administrative appeal, and (3) costing him the $15 his doctor charged to complete a claim form. Sumpter demanded $100,000 for the early-payout benefit plus hundreds of thousands of dollars in "equitable relief." In granting summary judgment for MetLife, the district court reasoned that when Sumpter became disabled, Delphi's plan did not provide the benefit he seeks and that he is not entitled to equitable relief.

Sumpter challenges the district court's analysis, but MetLife insists, as it did in the district court, that the bankruptcy proceedings preclude Sumpter from pursuing the early-payout benefit from the company. We disagree. ERISA authorizes a participant to sue to "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). When a plan is implemented by insurance and the insurance company both determines eligibility and pays claims, a participant may sue the insurer under section 1132(a)(1)(B) for benefits wrongfully denied. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013); *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc); see *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108–09 (2008) (involving suit under section 1332(a)(1)(B) against MetLife where company served dual roles as plan administrator and insurer of benefits). MetLife concedes that it issued the group insurance policy to fund benefits under "the Plan" and that it is the "Plan's funding source" (MetLife doesn't say which version of the plan). Also, we are not told how Delphi's bankruptcy would affect MetLife's obligations, if any, to Sumpter. Even the bankruptcy court rejected this contention, and during the hearing when it enjoined the litigation against DPH and the plan, it told Sumpter that he could proceed against MetLife in this case.

The problem for Sumpter is on the merits: his lawsuit is frivolous because MetLife has no obligation to pay the benefit he seeks. Sumpter doesn't seriously dispute

that GM eliminated the early-payout benefit from its plan in 1994 and that Delphi didn't include a similar benefit in its 2000 plan. Even so, Sumpter argues he is entitled to the early-payout benefit under GM's 1992 plan because GM (and later Delphi) didn't give him plan summaries. But whether or not that allegation is true, section 1132(a)(1)(B) does not authorize a court to "reform" a plan by reading into it a benefit not provided by the plan's terms. *Cigna Corp. v. Amara*, 563 U.S. 421, 435–36 (2011). "[C]ourts should confine the benefits to the terms of the plans as written," *Admin. Comm. of the Wal-Mart Stores, Inc. Assoc's Health and Welfare Plan v. Varco*, 338 F.3d 680, 692 (7th Cir. 2003), and here the parties agree that the relevant plan—Delphi's plan from 2000—did not provide the early-payout benefit.

Sumpter also invokes a provision of ERISA authorizing courts to award "appropriate equitable relief" for breaches of fiduciary duties. See 29 U.S.C. § 1132(a)(3)(B). But a denial of benefits, without more, does not constitute a breach of fiduciary duty that can be remedied under the equitable-relief provision; that's what section 1132(a)(1)(B) is for. See *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"); *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 373 (6th Cir. 2015) (en banc) (recognizing that claimant may not pursue equitable relief when his claim for breach of fiduciary duty amounts to nothing more than a repackaged claim for wrongful denial of benefits).

To the extent that Sumpter's claims for breach of a fiduciary duty are not his wrongful-denial claim by another name, they are frivolous. Sumpter first faults MetLife for not alerting him that GM eliminated the insurance payout benefit in 1994, yet he concedes that it was the plan administrator (GM or Delphi)—not the claims administrator (MetLife)—that had the duty to distribute updated plan documents. See *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 741–42 (7th Cir. 2012) (concluding that insurer was not responsible under ERISA for employer's failure to distribute plan documents to participants). Sumpter also faults MetLife for taking too long to process his administrative appeal from the denial of benefits, but the appropriate remedy for tardy processing is "immediate access to judicial review," *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S.Ct. 604, 614 (2013), not damages. Finally, Sumpter contends that MetLife hindered the claims process by causing him to incur a $15 charge from his doctor for completing a claim form. See 29 C.F.R. § 2560.503-1(b)(3) ("[A] provision or practice that requires payment of a fee or costs as a condition to making a claim or to appealing an adverse benefit determination would be

considered to unduly inhibit the initiation and processing of claims for benefits."). But Sumpter does not have evidence that MetLife knew his doctor charged him for completing the form, much less that the company refused to reimburse him for the expense. Under these circumstances, we cannot say that MetLife unduly inhibited the claims process.

We have considered Sumpter's remaining arguments, and none merits discussion.

AFFIRMED.