In the
# United States Court of Appeals
## For the Seventh Circuit

No. 24-2825

KAREN MORATZ,

*Plaintiff-Appellant,*

*v.*

RELIANCE STANDARD LIFE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:23-cv-00616 — **Richard L. Young**, *Judge.*

ARGUED APRIL 15, 2025 — DECIDED SEPTEMBER 2, 2025

Before EASTERBROOK, KOLAR, and MALDONADO, *Circuit Judges*.

KOLAR, *Circuit Judge*. This appeal arises from the COVID-19 pandemic—both its immediate effect on our daily lives and its continued impact on health and business. Karen Moratz, a professional musician, was on furlough when she contracted COVID-19 in December 2020. Since then, she has suffered debilitating dizziness and tinnitus that make it impossible for her to perform. Her employer, the Indianapolis Symphony

Orchestra, contracted with Reliance Standard Life Insurance to provide long term disability benefits. On her application for long term disability, Moratz indicated that she had last worked in March 2020 and that her disability made her unable to work as of December 2020. Because she was not working at the time of her reported onset of disability, Reliance denied her claim.

Moratz used the procedures available to her to appeal the decision, asking Reliance to take another look at her claim. For this internal appeal, Moratz submitted information showing she was rehired in September 2021, but that her continued illness made it impossible to practice or perform. The insurance company affirmed its denial, determining that the information about her return to work constituted a fundamentally different request for benefits. We agree.

While an employee benefit plan must consider additional or corrected information on appeal, it need not consider completely inconsistent information. The change in reported disability onset date and last day worked meant that Moratz went from asking Reliance to pay for a claim incurred when Moratz was not even working to a time when she was covered. Moratz's new information changed the nature of her claim and meant that she needed to submit a new application for benefits.

## I. Background

Karen Moratz is a world-class musician and has served as the principal flutist for the Indianapolis Symphony Orchestra ("ISO") since the late 1980s. In the face of the global COVID-19 pandemic, the ISO placed its musicians, including Moratz, on furlough in mid-March 2020. In December 2020, Moratz's

husband tested positive for COVID-19 and Moratz began to experience a cough, chills, vertigo, ear pain, fatigue, and brain fog.[1] Moratz's dizziness worsened, even after her cough resolved, and she had tinnitus, a continued ringing in her ears. Moratz sought answers for her symptoms and was diagnosed with vestibular migraines in early 2021 and referred to physical therapy to help manage the symptoms.

In September 2021, the ISO re-hired its musicians and began to prepare for the 2021–22 season. Moratz likewise returned to work but found that practicing with the full symphony exacerbated her dizziness and that she could not hear the other musicians due to her tinnitus. ISO placed Moratz on sick leave on September 15, 2021. In February 2022, Moratz applied for long term disability from Reliance under a policy purchased by the ISO and provided to Moratz as part of her employment benefits.

In the February 2022 application, Moratz reported that the last day she had worked before her disability was March 13, 2020 and she had not returned to work since then. Moratz gave December 11, 2020 as the first date she could not work on a full-time basis. In the portion of the application her employer had to complete, the ISO listed Moratz's last day of work as March 18, 2020, although it noted that she had been "furloughed due to pandemic."

Reliance denied Moratz's application less than a week after receiving it, stating that Moratz was not eligible for Long Term Disability benefits. Specifically, the eligibility requirements of the Policy required a person be part of an "Eligible

---

[1] Moratz herself never tested positive for COVID-19, but her medical records show that her doctors believed she had contracted it.

Class," which was defined as "active, Full-time employee[s]." According to Reliance, Moratz was not an "active, Full-time employee" when her disability commenced in December 2020, so she was ineligible for coverage. While Reliance extended Long Term Disability coverage for 90 days due to the COVID-19 pandemic, that extension ended in June 2020, so the December 2020 onset date fell outside of the term.

About six months later, in August 2022, Moratz appealed the decision through counsel and submitted a lengthy letter, additional medical records, and declarations from her colleagues. Her letter explained that the ISO had rehired her in September 2021 and the appeal packet contained declarations from the ISO's human resources director and other musicians confirming that Moratz was a full-time, active employee as of September 1, 2021. The letter and supporting declarations asserted that Moratz's tinnitus, dizziness, and medication-induced dry mouth made her unable to perform the material duties of her occupation. Because Moratz's symptoms prevented her from practicing and performing with the ISO, she went on sick leave on September 15, 2021. The appeal packet noted that Moratz's sick leave ran out in March 2022, so she tried to return to work, but could not do so and had to take additional time off. Moratz argued that she was eligible for coverage under the Policy as of September 1, 2021.

Reliance affirmed its denial of Moratz's claim in January 2023. Reliance reiterated that because Moratz was not an active employee when she became disabled in December 2020, she did not have coverage. As to the evidence that Moratz had been re-hired by the ISO, Reliance stated, "[b]ased upon the new hire date of September 1, 2021, Ms. Moratz can file a new LTD [long term disability] claim." Reliance had also sent

Moratz's file to an independent physician for review, who opined that the medical information provided did not support finding that Moratz was unable to work from March 2020 to January 2023.

Moratz filed this suit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001 *et seq.*, which allows an unsuccessful claimant to sue "to recover benefits due to him under the terms of [an employee welfare benefit] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). In the district court both parties moved for summary judgment under Federal Rule of Civil Procedure 56, and the court granted summary judgment to Reliance. This appeal ensued.

## II. Discussion

We review the district court's summary judgment decision *de novo*. *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 643 (7th Cir. 2007) (applying *de novo* standard of review to district court's ERISA decision when parties cross-moved for summary judgment under Rule 56); *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 460–61 (7th Cir. 1997) (same).[2]

The parties agree that because Reliance did not respond in a timely manner to Moratz's appeal, we do not owe deference to Reliance's decision and we should apply the so-called "*de novo* review*" to the plan administrator's denial of benefits. *See Fessenden v. Reliance Std. Life Ins. Co.*, 927 F.3d 998, 1004–05

---

[2] Parties in ERISA benefit denial cases often move via Federal Rule of Civil Procedure 52(a) for judgment based on the administrative record, in which case we review the district court's factual findings for clear error. *See Dorris v. Unum Life Ins. Co. of America*, 949 F.3d 297, 303 (7th Cir. 2020).

(7th Cir. 2019) (no deference to late decision by plan administrator). As we have previously noted, the term "*de novo* review" is misleading in the ERISA plan benefits context because, in actuality, the district court is charged with "making an independent decision about the employee's entitlement to benefits." *Diaz*, 499 F.3d at 643; *accord Dorris v. Unum Life Ins. Co. of America*, 949 F.3d 297, 304 (7th Cir. 2020) ("[W]hat happened before the plan administrator is irrelevant in a de novo review case."). The plaintiff must show that she is entitled to benefits under the terms of the policy. *Scanlon v. Life Ins. Co. of N. America*, 81 F.4th 672, 676 (7th Cir. 2023).

Federal common law rules of contract interpretation govern our reading of the policy. *Tran v. Minnesota Life Ins. Co.*, 922 F.3d 380, 382 (7th Cir. 2019). "Under those rules, we are to 'interpret the terms of the policy in an ordinary and popular sense, as would a person of average intelligence and experience, and construe all plan ambiguities in favor of the insured.'" *Diaz*, 499 F.3d at 644 (quoting *Santaella*, 123 F.3d at 461).

Reliance issued a Group Long Term Disability Policy to the ISO, which is an employee welfare benefit plan governed by ERISA. *See* 29 U.S.C. §1002(1). The Policy states, "[a] person is eligible for insurance under this Policy if he/she is a member of an Eligible Class, as shown on the Schedule of Benefits page." "Eligible Classes" are composed of "active, Full-time employee[s], except any person employed on a temporary or seasonal basis…." Because the Symphony pays 100% of the insurance premium, the Policy goes into effect on the "Individual Effective Date … shown on the Schedule of Benefits page," which is "[t]he day the person becomes eligible." Coverage under the Policy terminates on "the date the

Insured ceases to meet the Eligibility Requirements." In short, a person is eligible for coverage and the Policy is effective at the same time—when that person is an "active, Full-time employee."

Moratz was ineligible for coverage under the Policy based on the information she provided in her initial application because she was not employed by the ISO when she became disabled. Moratz wrote that the "last day [she] worked before the disability" was March 13, 2020 and checked a box indicating she had not returned to work. She also wrote that "the date [she was] first unable to work on a full time basis" was December 11, 2020. Moratz was not working for the ISO in December 2020.[3] Under the terms of the Policy then, Moratz was not eligible for coverage for a disability that began on December 11, 2020.

---

[3] The terms "Actively at Work" and "Active Work" are specially defined in the Policy and are used in other portions of the Policy. We do not decide whether "active, Full-time employee" in the eligibility provision of the Plan incorporates the definition of "Actively at Work" or "Active Work." The parties did not brief this issue and Moratz was not an "active, Full-time employee" in December 2020 under the "Actively at Work" definition or a general understanding of the term "active." We note that the First, Fourth, Fifth, Sixth, and Tenth Circuits have found that "active" in the eligibility provision is ambiguous and thus to be construed against the insurer. *See Ministeri v. Reliance Std. Life Ins. Co.*, 42 F.4th 14, 23–24 (1st Cir. 2022) (interpreting life insurance policy with similar language); *Tester v. Reliance Std. Life Ins. Co.*, 228 F.3d 372, 376–77 (4th Cir. 2000) (interpreting accidental death insurance policy with similar language); *Miller v. Reliance Std. Life Ins. Co.*, 999 F.3d 280, 284–85 (5th Cir. 2021); *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 893–94 (6th Cir. 2020); *Carlile v. Reliance Std. Life Ins. Co.*, 988 F.3d 1217, 1223–29 (10th Cir. 2021).

Moratz does not argue that she was an "active, Full-time employee" of the ISO in December 2020. Instead, she argues that the documents submitted on appeal showed she was eligible for coverage because she had been re-hired by the ISO in September 2021. Moratz points to ERISA regulations that require a plan administrator to "take[] into account all … information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. §2560.503–1(h)(2)(iv); *see also* 29 C.F.R. §560.503–1(h)(2)(ii) *and Fessenden*, 927 F.3d at 1005 (on review a claimant can submit additional information relating to their claim for benefits).

Reliance responds that Moratz's amendments on appeal were a new claim for benefits, so Moratz should have submitted a new application. This dispute constitutes the heart of the matter: when does supplemental information create a new claim for benefits? Here, Moratz did not provide new information that shed light on her initial claim. Rather she tried to do a complete 180 and change the date she claimed she was last able to work. That is not a "new" fact, it is a contrary fact.

ERISA sets certain requirements for employee benefit plans when processing benefit claims; they must "provide adequate notice in writing" of their decision to deny a claim for benefits and "afford a reasonable opportunity … for a full and fair review by the appropriate named fiduciary of the decision denying that claim." 29 U.S.C. §1133(1)–(2). The Department of Labor, acting under the authority delegated to it by ERISA, promulgated regulations to govern the claims procedures. *See* 29 U.S.C. §1135; 29 C.F.R. §2560.503-1(a)–(p). Under those regulations "a claim for benefits" is a "request for a plan benefit or benefits made by a claimant in accordance with a plan's

reasonable procedure for filing benefit claims." 29 C.F.R.
§2560.503-1(e). So, we turn to the Policy.

The Policy requires a claimant to provide Reliance with
"[w]ritten notice of a claim" within 30 days of the onset of the
Insured's disability.[4] That notice must provide "enough infor-
mation so that [Reliance can] identify the Insured as being
covered" by the Policy. Next, a claimant must send in "writ-
ten proof of the Insured's claim," which can be submitted
through claim forms or a "written statement of the Insured's
claim," describing "the occurrence, character and extent of the
Total Disability for which the claim is made."[5] Reliance will
"evaluate the Insured's written proof of claim to determine if
the Insured has provided satisfactory proof of loss…."

Reading those provisions together indicates the Policy re-
quires an Insured to send in (a) notice of their claim and (b)
written proof of their claim providing sufficient information
about the claimant's "Total Disability" to show that they have
suffered a coverable loss. The Policy ties a "claim" to the oc-
currence of a "loss" for which the Insured wants compensa-
tion. Put another way, a "claim" is the Insured's request for
coverage—payment of benefits—for a particular "loss"—the
inability to work.

In her initial application for benefits, Moratz stated she
was first unable to work in December 2020. The loss for which

---

[4] The Plan defines an "Insured" as "a person who meets the Eligibility
Requirements of this Policy and is enrolled for this insurance." Whether
Moratz was enrolled for the insurance is not at issue in this appeal.

[5] "Total Disability" means that "as a result of an Injury or Sickness …
an Insured cannot perform the material duties of his/her Regular Occupa-
tion."

she was requesting coverage was an inability to work beginning in December 2020. In her appeal, Moratz was requesting coverage for an inability to work beginning in September 2021—that is a separate loss. Moratz's health condition and her relationship with her employer, along with other relevant facts about the "loss," were different in September 2021 than in December 2020. She submitted information that in effect requested coverage for a different loss, and that meant she was submitting a new claim.

Moratz argues the information she submitted on appeal fixed errors in her initial application, which is allowed under the ERISA regulations. It is certainly true that a claimant can add additional information about her claim, 29 C.F.R. §2560.503–1(h)(2)(iv), and common sense dictates she should be able to fix an error on her initial application, including relevant dates. *See*, *e.g.*, *Howington v. Smurfit-Stone Container Corp.*, 856 F. Supp. 2d 1235, 1243–44 (S.D. Ala. 2012) (plan administrator's fiduciary responsibilities required it to fully investigate plaintiff's claim even though plaintiff had written the wrong onset date on his Social Security application and the plan language held the Social Security onset date was determinative).

But the change from a claim that Moratz was unable to work beginning in December 2020 to a claim that Moratz was unable to work beginning in September 2021 is more than just fixing a scrivener's error. Consider what Reliance had before it on Moratz's first application: both her and the ISO's statements of date last worked indicated that Moratz had not returned to work since March 2020. Now consider what was in front of Reliance on appeal, that Moratz had last worked in September 2021, with the ISO confirming. The first

application was inconsistent with the second. No claims processing system can work if an applicant can submit information that is not just new or complementary but completely inconsistent with previous facts. The information submitted on appeal asks Reliance to pay a claim that it did not have before it in the first place.

Finally, we cannot consider now whether Moratz was entitled to coverage on the new claim based on the language of the Policy. Our precedent requires an applicant to an employee welfare benefit plan to exhaust her administrative remedies before filing suit under 29 U.S.C. §1132 to enforce the terms of a plan. *Schorsch v. Reliance Std. Life Ins. Co.*, 693 F.3d 734, 793 (7th Cir. 2012). This requirement is rooted in the fact that ERISA's claims procedures, including the protections for claimants, indicate Congress intended that "plan fiduciaries, not federal courts … have primary responsibility for claims processing." *Powell v. AT&T Communications, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). A district court may excuse the plaintiff's failure to exhaust her administrative remedies, "where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile," and we review its decision for abuse of discretion. *Schorsch*, 693 F.3d at 739 (internal quotation omitted).

Moratz has not argued that filing new paperwork would have been futile and did not provide any other reason that her failure to exhaust her administrative remedies on a September 2021 claim should be excused. *See, e.g.*, *Salus v. GTE Directories Service Corp.*, 104 F.3d 131, 138–39 (7th Cir. 1997) (plaintiff was excused from filing claim for short term disability when it was undisputed that claim would have been denied).

Moratz was therefore required to exhaust her administrative remedies for a claim based on the September 2021 date.

### III. Conclusion

Based on the record before us, Moratz was not eligible for benefits in December 2020, when her first application indicated that she was unable to work. The additional information that Moratz supplied on appeal constituted information about a separate loss—her inability to work beginning in mid-September 2021—and that is a new claim for benefits, requiring Moratz to complete a separate claim process. For that reason, the district court's entry of judgment in favor of Reliance is AFFIRMED.